IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL THOMAS LANAHAN,  \*

Plaintiff  \*

v  \*  Civil Action No. JFM-16-821

CLIFTON T. PIRKINS HOSPITAL CENTER, \*
*et al.*,
Defendants  \*

\*\*\*

## MEMORANDUM

Pending is a Supplemental Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed by Clifton T. Perkins Hospital Center ("Perkins"), Susan Lightman, Rebecca Ruchames, Sadiq Al-Samarrai, M.D., Khalid El-Sayed, M.D., and David Helsel, M.D.[1] ECF 13. Plaintiff has responded. ECF 22.[2] Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the dispositive motion will be GRANTED.

### Background

Plaintiff, Daniel Lanahan, currently confined at the Clifton T. Perkins Hospital Center ("Perkins"), filed this civil rights action pursuant to 42 U.S.C. § 1983, seeking money damages and injunctive relief. At the time he filed the case, he was undergoing mental health evaluation and treatment at Perkins. ECF 1. Plaintiff alleged that "on or about 2012-2013" his mail was stopped. He further claimed that an unidentified woman told the librarian not to print his legal work. *Id.*, p. 3. He also alleged "Dr. Al-Summuria was in charge" and that "Dr. El-Sayed took

---

[1] The Clerk shall amend the docket to reflect the correct names of defendants.

[2] Plaintiff has filed numerous letters with the court which have also been considered. See ECF 11, 15-21, 23-39.

over" and stopped plaintiff no matter what he tried to do to get released. *Id.* State defendants responded to the complaint with a motion to dismiss or in the alternative motion for summary judgment (ECF 9), which plaintiff opposed. ECF 11.

The reason for plaintiff's placement at Perkins is well documented. As a result of an altercation while plaintiff was committed to the Division of Correction, plaintiff was criminally charged with second degree assault against a Division of Correction employee. *See Lanahan v. Maryland*, Civil Action No. JFM-15-2030, ECF 29-5, p. 1. The District Court of Maryland for Howard County ordered, on June 22, 2012, plaintiff be evaluated to determine if he was competent to stand trial for the assault charge. *Id.*, ECF 29-7. Plaintiff was evaluated and on August 31, 2012, the District Court of Maryland for Howard County found plaintiff incompetent to stand trial and a danger to himself or others. *Id.*, ECF 29-8. Plaintiff was ordered committed to the Department of Health and Mental Hygiene. *Id.*

On September 4, 2014, the District Court of Maryland for Howard County found plaintiff incompetent to stand trial and not likely to regain competence within the foreseeable future. *Id.*, ECF 29-9. Plaintiff was ordered civilly committed and the assault charge was dismissed the following day. *Id.*, ECF 29-5, p. 1. Plaintiff remains civilly committed at Perkins, an administrative law judge having found him a danger to himself or others. *Id.*, ECF 18.

In this case, I held that before I could examine the issues presented, the question of plaintiff's current mental competency should be examined. ECF 12. I noted that by defendants' own admission, plaintiff had previously been found not competent to stand trial and involuntarily committed. His mental health status was not apparent based on the parties' recent submissions. Where, as in this case, "there has been a legal adjudication of incompetence that is brought to the

2

court's attention, [Fed R. Civ P. 17(c)(2)'s] provision is brought in play." *Id.* As such, defendants' dispositive motion was denied without prejudice subject to renewal and counsel for defendants was directed to provide any information to assist the court in determining whether plaintiff's continued participation as a self-represented litigant in this matter should continue. ECF 12.

Defendants have renewed their dispositive motion (ECF 13) and indicate that there is no need to appoint counsel to assist plaintiff in these proceedings. *Id.* Plaintiff has opposed the renewed motion. ECF 22.

Fed. R. Civ. P. 17(c)(2) states:

A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

With respect to Rule 17(c)(2), the Fourth Circuit has observed that "[t]he practical problem presented by a case in which a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit, with or without counsel, is a real one," adding that "[p]arties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability. Rule 17(c)(2) recognizes the existence of some forms of mental deficiency which may affect a person's practical ability to manage his or her own affairs that goes beyond "something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders." *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986). While Rule 17(c)(2) allows the court to appoint a guardian ad litem, it does not compel it to do so, but rather grants it considerable discretion to issue an "appropriate order" to protect the

interest of an unrepresented incompetent litigant. *See Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996).

Valerie Grimes, a Licensed Certified Social Worker employed by Perkins, avers that she is familiar with plaintiff. She indicates that plaintiff has not been provided a legal guardian, nor has Perkins sought to have a guardian appointed for him. ECF 13-10, ¶ 6. She further avers that to her knowledge there is no current finding that plaintiff is legally incompetent. *Id.*, ¶ 7.

Fed. R. Civ. P. 17(b)(3) provides, in pertinent part, that a determination regarding the capacity to sue or be sued is controlled by the law of the party's state of domicile. Under Maryland law, plaintiff retains a presumption of competency. *See Peaks v. State*, 18 A.3d 917, 925 (Md. 2011). Even if plaintiff had been appointed a guardian of the person, such appointment is not evidence, under Maryland law, of incompetency. *See* Md. Code Ann. Est. & Trusts, §13-706(b)). Similarly, plaintiff's current status as an involuntary patient at Perkins does not serve as an indicator of incompetence as no adjudication of competency is necessary prior to involuntary commitment. *See* Md. Code Ann. Health-Gen'l §10-607(1).

Plaintiff's often bizarre and delusional statements also do not serve as a bar to his proceeding in this case. In *Hudnall v. Seller*, 800 F.2d 377, 385 (4th Cir. 1986), Sellner developed a delusional belief that the chief of police's son murdered Hudnall's wife. Sellner published his beliefs regarding the murder, along with his belief that the police chief, the son, other police officers, and Hudnall conspired to covered up the murder and that Hudnall and the son switched identities. *Id.*, at 379. Hudnall successfully sued Sellner for defamation. *Id.*, at 379. Sellner appealed arguing that the trial court should not have permitted him to represent himself. *Id.*, at 381. The court found that Sellner's bizarre conduct did not raise such serious questions

regarding his capacity to sue such that the court was required to inquire into the appointment of a guardian ad litem. *Id.*, p. 386-87. In the instant case, plaintiff's delusional beliefs, like those in Hundnall, while bizarre, do not negate his capacity to proceed with his complaint. As such, I find no need for the appointment of a guardian ad litem.

## Standard of Review

### A. Motion to Dismiss

The purpose of a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's Complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require Defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

5

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

A.  Perkins

Conduct amenable to suit under 42 U.S.C. §§1983,[3] must be conduct taken by a person. A state and its agencies are not persons for purposes of 42 U.S.C. §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Perkins, is a State psychiatric hospital operated by the Behavioral Health Administration, a unit of the Maryland Department of Health and Mental Hygiene. Md. Code Ann. Health-Gen'l §§2-106 (a)(2), 7.5-201, 10-406(a)(1),(6).

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of

---

[3]  "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." 42 U.S.C. §1983 (emphasis supplied).

cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus plaintiff's complaint against Perkins is also barred by the Eleventh Amendment.

B.  Personal Participation

The complaint does not allege any personal participation by any of the named defendants regarding the alleged refusal to print plaintiff's legal work or regarding restrictions on plaintiff's ability to make telephone calls. Additionally, other than naming Dr. Helsel in the caption of the complaint, plaintiff fails to allege any conduct on the part of Dr. Helsel. Liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Plaintiff does not identify who told the librarian not to print his legal work or how Dr. Helsel violated his rights. As such, plaintiff's claims regarding as to Dr. Helsel and in regard to the refusal to print legal work must be dismissed.

C.  Supervisory Liability

Plaintiff alleges that Dr. El-Sayed "took over," but does not explain what he took over or how his conduct violated plaintiff's civil rights. Similarly, plaintiff alleges that Dr. Al-Samarrai "was in charge," but fails to allege improper conduct on the part of Dr. Al-Samarrai.

To the extent plaintiff intended to hold Dr. El-Sayed and Dr. Al-Samarrai liable as supervisors, his claim fails. It is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v.*

8

*Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Where, as here, a plaintiff points to no action or inaction on the part of supervisory defendants that resulted in a constitutional injury, the claims against supervisory personnel must be dismissed.

D. Due Process

Involuntarily committed patients at state psychiatric facilities are afforded liberty interests under the Due Process Clause of the Fourteenth Amendment. Therefore, the court must analyze plaintiff's complaint within the scope of Fourteenth Amendment protections afforded involuntary patients at state psychiatric facilities, to examine whether the state is providing these individuals with services necessary to ensure their "reasonable safety" from themselves and others. *Youngberg v. Romeo*, 457 U.S. 307 (1982). Indeed, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U. S. at 321-22 (claim that hospital officials knew patient was being injured but failed to intervene; improperly restrained patient for prolonged periods; and were not providing

appropriate treatment or training for his mental retardation); *see also Patten v. Nichols*, 274 F. 3d 829, 837 (4th Cir. 2001) (applying *Youngberg* standard to involuntarily committed psychiatric patients).

Under the *Youngberg* standard, the state must provide plaintiff with "adequate food, shelter, clothing, and medical care." *Id.* at 315. According to the Fourth Circuit, there is "no constitutionally significant difference between the nature of the protection-from-harm claims . . . and the denial-of-medical-care [claims]." *Patten,* 274 F.3d at 838.

In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." *Youngberg*, 457 U.S. at 319 (quoting *Poe v. Ullman*, 367 U.S. 497, 542 (1961)). The court applies the "professional judgment" standard, in which "the Constitution only requires that the Court make certain that professional judgment in fact was exercised." *Youngberg*, 457 U.S. at 321. Decisions made by professionals are presumptively valid and "liability may be imposed only when the decision by the professional is such a *substantial departure* from . . . professional judgment, practice, or standard as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323 (emphasis added).[4]

1. Medical Care

As an involuntarily committed patient in a State psychiatric facility, plaintiff has a "'significant constitutionally protected liberty interest in avoiding the unwarranted

---

[4] In applying this standard, the Fourth Circuit has held that that a defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional." *Patten*, 274 F.3d at 843.

administration of antipsychotic drugs.'" *Sell v. United States*, 539 U.S. 166, 178 (2003), quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). "Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." *Youngberg*, 457 U.S. at 324. The Fourteenth Amendment ensures that states will provide not only for the medical needs of those in penal settings, but for anyone restricted by a state from obtaining medical care on his own. *See DeShaney v. Winnebago*, 489 U.S. 189, 200 (1989); *Youngberg*, 457 U.S. at 324.

Plaintiff complains about the fact that he was hospitalized and that he has not received medication for ADD or ADHD. He does not identify who provided inadequate medical care, nor does he allege how there was a "substantial departure from accepted professional judgment." As such, his claim regarding medical care is subject to dismissal.[5]

---

[5] In *Lanahan v. State*, JFM-15-2030, the court considered plaintiff's claims that he was forcibly medicated and denied treatment for ADD/ADHD. The court held:

> There is ample evidence that plaintiff's involuntary medication was necessitated by his behavior. Against the backdrop of plaintiff's behavior, his liberty interest in remaining free of unwanted medication was properly overridden. *See Harper*, 494 U.S. at 225. Moreover, plaintiff received the procedural protections required before a protected liberty interest may be infringed. Plaintiff was provided notice, the right to be present at an adversarial hearing, and the right to present and cross-examine witnesses each time an order for his involuntary medication was issued. ECF 29-10, 29-11, 29-13, 29-14, 29-16, The process for review of the decisions to involuntarily medicate plaintiff comports with procedural due process. *See Harper*, 494 U.S. at 235.
>
> Plaintiff's claim that he does not suffer from a psychiatric illness, but rather requires medication to treat ADD or ADHD, is belied by the record and appears to be the fruit of his delusional thinking. Nothing in plaintiff's treatment constitutes a substantial departure from professional judgment or impermissibly impacted plaintiff's health. Defendants exercised professional judgment in deciding to forcibly medicate plaintiff and in the selection of the medication appropriate to treat him. Based on the record evidence, defendants Sadiq Al-Samarrai, M.D., Khalid El-Sayed, M.D., and David Helsel, M.D. are entitled to summary judgment.

2. Telephone and Mail Restrictions

The record evidence demonstrates that plaintiff has made hundreds of calls to federal and State agencies. Additionally, he has sent hundreds of letters to courts, government agencies, and the White House. ECF 13-3, ¶ 9. Dr. Al-Samarrai avers that many of plaintiff's communications contain threatening language. ECF 13-6, ¶9. Both the Maryland Governor's Office as well as the United States Secret Service asked the hospital to impose restrictions on plaintiff's use of the telephone and mail to contact them. ECF 13-7, p. 20.

In October of 2013, Dr. El-Sayed, who was at the time plaintiff's treating physician, presented plaintiff's case to the hospital's Clinical/Forensic Review Board ("Board") for guidance regarding managing plaintiff's problematic communications. ECF 13-3, ¶ 6.; ECF 13-7, p. 20. Dr. Sayed related to the Board that plaintiff's communication were possibly violent and threatening. ECF 13-7, p. 20. After review of plaintiff's history of threatening communication (*see e.g.* ECF 13-7, pp. 2-14, 19-20) and the requests from various agencies to restrict his ability to communicate with them (see e.g. ECF 13-7, pp. 15, 17), the Board "agreed that continued mail and telephone conversations in much the same manner could potential[ly] create a further safety risk and the patient could be causing himself unintended harm—as a consequence of his pervasive delusional thought content." *Id.*, p. 20. The Board agreed that there should be restrictions on plaintiff's mail and telephone communication, and further agreed that the restrictions should be routinely reassessed. *Id.*

Thereafter, Dr. El-Sayed presented a plan for restricting plaintiff's communication: security was directed to hold plaintiff's outgoing mail which would be returned to members of

---

ECF 48, pp. 10-11.

the treatment team and then returned to plaintiff. If plaintiff felt the mail had to be sent, its contents would be reviewed with an appropriate treatment team member prior to mailing. *Id.*, p. 22. Plaintiff was permitted to mail correspondence so long as it was "safe/appropriate/not liable to cause harm to the patient or anyone else." *Id.* Plaintiff was restricted to only using the "black phone" with assistance of a staff member present at the time of his call, and was not permitted to use the pay phone or have other patients make calls on his behalf. *Id.* He was permitted to call his attorney and parents. *Id.*, p. 23. Plaintiff begrudgingly agreed to the restrictions ( *id.*, p. 21) and complied intermittently with the plan. *Id.*, p. 23. The restrictions were lifted when he complied for an entire month. *Id.*, p. 24. They were later re-imposed when plaintiff called the Coast Guard and threatened to kill the President. ECF 13-8, p. 3.

The record evidence demonstrates that defendants exercised professional judgment in crafting and imposing the mail and telephone restrictions on plaintiff. Moreover, the restrictions furthered an important governmental interest. Based on the evidence, defendants are entitled to summary judgment.

## Conclusion

For the aforementioned reasons, defendants' motion to dismiss, or in the alternative for summary judgment, construed as a motion for summary judgment, shall be GRANTED. A separate Order follows.

5/24/17
Date

J. Frederick Motz
United States District Judge

13